**CENTRAL STATES, SOUTHEAST and SOUTHWEST AREAS PENSION and Health and Welfare Funds and John E. Dwyer, Plaintiffs,**

v.

**C. J. ROGERS TRANSPORTATION CO., a Michigan corporation, Defendant.**

Civ. No. 79–70074.

United States District Court, E. D. Michigan, S. D.

June 10, 1982.

As Amended June 22, 1982.

Russell N. Luplow, Charles Taunt, Bloomfield Hills, Mich., for plaintiffs.

Robert L. Coopes, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

Before the Court is a motion by plaintiff Central States, Southeast and Southwest Areas Pension Fund (Central States) requesting an award of interest, statutory damages and attorney fees and costs in this action to collect unpaid contributions from defendant C. J. Rogers Transportation Company (C. J. Rogers) under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, as amended (ERISA).

### I.

### A.

This action was begun by Central States on January 10, 1979 to collect contributions owed by C. J. Rogers under a collective bargaining agreement between the parties in which C. J. Rogers agreed to make payments on behalf of its employees to and be bound by the terms of two trust agreements creating two separate trust funds administered by Central States. Specifically, Central States alleged C. J. Rogers was delinquent in its payments to the Pension Fund and the Health and Welfare Fund in the amount of approximately $160,000 through the filing date of the complaint. Claims for amounts owed to the Health and Welfare Fund were eventually withdrawn by Central States.

Throughout the course of this action, C. J. Rogers has never seriously disputed the fact of its delinquencies, only the amount. Two partial judgments have been entered. On each occasion the parties agreed in open court that C. J. Rogers owed at least the amount set forth in the judgment entered. On neither occasion did either party ask the Court to conduct an evidentiary hearing or consider any evidence. The judgments did not specify whether any part of the amounts awarded represented interest owed or covered only unpaid contributions. The first judgment in the amount of $38,496 was entered on November 26, 1979; that amount was paid by C. J. Rogers in January and February 1980 and was credited to its account by Central States according to the Pension Fund's usual practice, described more fully below. A second judgment in the amount of $122,376.50 was entered on February 25, 1981 following a July 1980 audit at which the parties finally

worked through each other's figures in an attempt to find agreement on the amounts owed. A stipulation placed on the record at the time of the second judgment reserved the issues of interest, statutory damages and attorney fees and costs, to be decided by the Court in the event the parties were unable to agree as to the amounts owed on these items. The parties were unable to agree.

### B.

Central States' motion was filed on May 22, 1981; C. J. Rogers responded on September 8, 1981. Following an unsuccessful settlement conference in October 1981, the parties filed supplemental briefs. On April 1, 1982, the Court conducted an evidentiary hearing at which a Central States auditor and a C. J. Rogers accountant testified concerning the Pension Fund's practices in crediting payments to principal and interest. Post-hearing briefs on the issue of statutory damages were filed by each party at the Court's request.

### II.

Central States appears to seek (1) interest on what it says are unpaid contributions reflected in the February 25, 1981 judgment in the amount of $53,162.59; (2) statutory damages under 29 U.S.C. § 1132(g)(2)(C)(i) in a like amount; and (3) attorney fees and costs in the amount of $54,885.11, representing 692 hours of attorney time at $100 and $75 per hour and approximately $1,700 in expenses.

C. J. Rogers initially took issue with Central States' method of computing interest, claiming interest was being "compounded" in contravention to the language of the Pension Fund trust agreement; its position appeared to change at the evidentiary hearing when Central States' practices in crediting payments were delineated, as explained below. C. J. Rogers also argues Central States is not entitled to statutory damages notwithstanding this Court's ruling that the mandatory award of "double interest" under the Multiemployer Pension Plan Amendments Act of 1980 is retroactive to cases pending at the time of its enactment, *Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919 (E.D.Mich.1981), although again the basis of its argument has shifted dramatically. Finally, C. J. Rogers argues Central States' request for attorney fees and costs is excessive both in number of hours and the requested rate.

After careful analysis, the Court concludes:

(1) At the time the second judgment was entered on February 25, 1981, C. J. Rogers actually owed the Central States Pension Fund $175,539.09 for unpaid contributions and no interest; thus Central States is entitled to a final judgment under 29 U.S.C. § 1132(g)(2)(A) in the amount of $53,162.59, representing unpaid contributions on the date of the second judgment.

(2) Since C. J. Rogers was current in its payment of interest owed on delinquent unpaid contributions on February 25, 1981, Central States is not entitled to any interest under 29 U.S.C. § 1132(g)(2)(B).

(3) Central States is similarly not entitled to any statutory damages ("double interest") under 29 U.S.C. § 1132(g)(2)(C).

(4) Attorney fees and costs (other than those which may be taxed under 28 U.S.C. § 1920 by application to the Clerk of the Court) are allowed Central States in the amount of $39,140.

### III.

The Pension Fund trust agreement, the basis of C. J. Rogers' obligations, provides in part:

"Article XIV. Section 4. Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest at the rate of eight (8) per cent per annum on the moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the

Trustees, including but not limited to, attorneys fees and such fees for late payment as the Trustees determine as permitted by law.

. . . . .

Article III. Section 4. . . . . The Trustees are authorized to receive all Employer contributions and apply such contributions first to any interest due, and then to the oldest unpaid balance of contributions due. Nothing herein shall give any Employer the right to designate how any contributions shall be applied."

The interest rate to be charged on unpaid contributions under Article XIV, Section 4 was raised from 8% to 9% per annum by a resolution of the trustees effective January 1, 1980. The period of delinquency in this case runs from August 1974 until February 25, 1981; Central States did not begin charging interest until November 1975.

An understanding of Central States' system of crediting payments is necessary to resolve the issues posed by the request for interest and statutory damages. As explained at the evidentiary hearing, Central States posts the amount owed by an employer for contributions and charges interest on unpaid contributions on a monthly basis. The total owed by an employer at the end of a given month is the sum of the employer's previous month's outstanding balance, interest computed at an annual rate of 8% (.66% per month) or 9% (.75% per month) on that balance and the current month's adjusted billing, less payments received during the month. According to the formula authorized by Article III, Section 4 of the trust agreement, payments received are applied first to any interest due and then to the principal balance outstanding. In any month in which no payment is received (in this case November and December 1975, January, February and September 1976, June 1978, November 1979, March, May, June and December 1980 and January 1981) interest on the previous month's outstanding balance is charged but not posted to the employer's account; rather it is kept in a "suspense" account and is posted at the end of the month in which the next payment is received, with that payment of course being applied first to interest and the balance, if any, to principal.[1]

Under this method, authorized by Article III, Section 4 of the trust agreement, interest is never charged on interest or "compounded". Interest is never posted to an employer's account until such time as a payment is received from the employer, which at all times at least in this case was sufficient to render the "interest account" current. In other words, interest is charged but not posted until a payment larger than the amount of that interest is received. Since interest is calculated on the outstanding principal balance of the account, interest is never charged on interest.

In addition, it is clear that under this method an employer keeps its "interest account" current by making monthly payments at least equal to the prior month's interest charge or by making lump sum payments sufficiently large to cover past interest charged but not posted in months in which it made no payments. In this case, C. J. Rogers owed Central States $175,539.09 when the second judgment was entered on February 25, 1981, but the $4,075.95 interest outstanding from the prior months had been covered by a $14,444 payment received by Central States on February 10, 1981 and posted to C. J. Rogers' account, making the "interest account" current on the date the judgment was en-

---

1. As an example, assume the monthly billing for an account of $100, due at the beginning of each month, with interest at 9% per annum (.75% per month). If there is no prior outstanding balance on March 1 and a $50 payment is received on April 10, the outstanding balance on April 30 (disregarding interest for April) is determined as follows:

| | | |
|---|---|---|
| March 1 | $100.00 | March principal |
| March 31 | [.75] | Interest (charged but not posted) |
| April 1 | 100.00 | April principal |
| April 10 | (50.00) | PAYMENT |
| April 30 | $150.75 | BALANCE OWING |

The .75 interest charge for March was posted to the account when the April 10 payment was made, making the balance owed before application of that payment $200.75. The payment is

tered.[2] The amount then owing to Central States represented unpaid contributions only.

## IV.

### A.

The remedies sought by Central States for C. J. Rogers' failure to make payments as required by the collective bargaining agreement are authorized by § 1132(g)(2) of ERISA. That subsection reads:

"In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 *in which a judgment in favor of the plan is awarded,* the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1954." (emphasis added)

The remedies in § 1132(g)(2) are mandatory and, as this Court held in *Alco, supra,* retroactive to actions begun before their effective date (September 26, 1980) in which a judgment was entered subsequent to that date.

■ At the time the second judgment was entered on February 25, 1981, C. J. Rogers acknowledged it owed Central States at least the amount of the judgment. No breakdown was made on the record or in the judgment between the amount Central States claimed was unpaid contributions and the amount claimed as interest. In Central States' pending motion, it asserts the difference between the total amount owed by C. J. Rogers on February 25, 1981 ($175,539.09) and the amount of the second judgment ($122,376.50), a total of $53,162.59, is interest. Once Central States' practice of crediting payments was explained at the evidentiary hearing, however, it became clear and the Court has concluded that the $53,162.59 represented unpaid contributions rather than interest. The Court further concludes that this amount is owed to Central States and is not encompassed by any prior judgment;[3] thus a final judgment will be entered to include an award of $53,162.59 as "unpaid contributions" under § 1132(g)(2)(A).

### B.

§ 1132(g)(2)(B) of ERISA provides that the court shall include in a judgment entered in favor of the plan "interest on the

then applied first to interest and then to principal, reducing the amount owed to $150.75.

**2.** Since the judgment was entered in the middle of a month rather than at the end of a monthly period and the record does not reflect when Central States posts the payments received to the account, it is unclear whether interest from February 1, 1981 through February 25, 1981 was included in the $175,539.09 shown owing as of "February 1981" in the Central States' schedule, Exhibit F to its initial brief. The $14,444 payment received from C. J. Rogers by Central States on February 10, 1981, however, was large enough to have kept the "interest account" current even if interest was not but should have been included. Neither party having raised this issue, the Court assumes the amount involved (which would increase the principal owed to Central States by approximately $1,175) is considered *de minimis.*

**3.** The first judgment in the amount of $38,496 was paid by C. J. Rogers in January and February 1980 and credited by Central States in accordance with its normal practices as described above. It is thus irrelevant to the present motion.

unpaid contributions". § 1132(g)(2)(C)(i) provides the court shall also include in such a judgment an amount equal to "interest on the unpaid contributions".[4] Taken together, subsections (B) and (C)(i) constitute what is termed the "double interest" remedy. *Alco, supra,* 522 F.Supp. at 921 n.2.

■ It is clear that Central States is not entitled to interest under subsection (B) on the unpaid contributions. Under Central States' practices, interest on the outstanding unpaid contributions was calculated monthly and payments received from C. J. Rogers were applied first to any outstanding interest due. Thus Central States collected interest on the unpaid contributions on a monthly basis while the C. J. Rogers account was delinquent from March 1976 (picking up interest charged from October 1975) until February 1981. On February 25, 1981, the date the second judgment was entered, the outstanding balance in the C. J. Rogers "interest account" was $0; Central States had collected interest on the outstanding contributions to that date.

The introductory sentence to § 1132(g)(2) reads "In any action ... in which a judgment in favor of the plan is awarded" the court shall award the remedies set forth in subsections (A)–(E). Clearly Congress did not intend to allow interest to be reassessed on the unpaid contributions owing on the date of entry of judgment when the plan has assessed and collected interest up to that time. Central States was compensated for the use of "its" money by C. J. Rogers when it collected interest during the running of the account. The Court is satisfied Congress intended by the plain language of subsection (B) to award only interest *owing* on the unpaid contributions on the date the judgment is entered. Any other interpretation of § 1132(g)(2)(B) would allow Central States to reassess interest from C. J. Rogers. Central States cites no evidence of Congressional intent to allow that anomalous result to stem from the clear language

of § 1132(g)(2)(B). *See Federal Bureau of Investigation v. Abramson,* —— U.S. ——, ——–——, 102 S.Ct. 2054, 2066–67, 72 L.Ed.2d 376 (1982) (O'Connor, J., dissenting).

### C.

In awarding "an amount equal to ... interest on the unpaid contributions" in § 1132(g)(2)(C)(i), Congress used the identical language employed in subsection (B). In fact, the Senate Committee on Labor and Human Resources staff indicated the intent of the statutory damages provision in subsection (C)(i) was to award double interest on the contributions owed to encourage prompt payment by employers. *See* Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., *S.1076, The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration* (Comm. Print 1980) at 43–4.

Congress could have chosen a variety of methods for computing a liquidated damage amount above and beyond the interest awarded a plan obtaining a judgment for unpaid contributions. What it chose, in the absence of a liquidated damages provision in the plan itself, was double interest. Thus it used identical language to express the award of interest in subsection (B) and to express the amount of liquidated damages in subsection (C)(i). *See* 29 U.S.C. § 216(b) ("double wages" as liquidated damages under Fair Labor Standards Act).

■ The use of parallel language, of course, calls for a parallel construction. *See Fortin v. Marshall,* 608 F.2d 525, 528 (1st Cir. 1979); *Ford Motor Co. v. Insurance Co. of North America,* 494 F.Supp. 846, 851 (E.D.Mich.1980), *vacated on other grounds,* 669 F.2d 421 (6th Cir. 1982); 73 Am.Jur.2nd *Statutes* § 232 (1974). Given the Court's conclusion that "interest on the unpaid contributions" in subsection (B) means interest owing on the date the judgment is entered, the identical phrase in subsection (C)(i) is

---

**4.** § 1132(g)(2)(C) actually mandates the award of the greater of interest on the unpaid contributions or liquidated damages as provided for in a plan up to 20% of the amount of unpaid

contributions. Since the Pension Fund plan does not provide for liquidated damages, Central States' only claim under subsection (C) is for interest under (C)(i).

reasonably construed in an identical fashion. Since no interest was owed by C. J. Rogers on February 25, 1981, Central States is entitled to no statutory damages; in mathematical terms, twice zero is zero.[5]

## V.

### A.

Central States asks for an award of attorney fees and costs in the amount of $54,885.11. In support of its request it has submitted detailed affidavits describing the hours worked, date, name of attorney, nature of work performed and hourly rate requested. The $54,885.11 represents $1,713 in expenses and 692 hours of attorney time from December 1978 through November 1981; the work was performed by three attorneys at a requested rate for 51 hours of $100 per hour, the balance at a requested rate of $75 per hour.

C. J. Rogers argues that a portion of the request is attributable to work performed to recover monies Central States erroneously believed were owed to the Health and Welfare Fund, a claim which it represents was withdrawn by Central States after the July 1980 audit. Therefore it says these hours should be disallowed because the claim was "frivolous". C. J. Rogers also argues some hours are duplicitous, some work could have been performed by para-legals rather than attorneys and the requested rate is excessive for what it terms a "simple collection case". C. J. Rogers submits affidavits of its own counsel and another member of the bar in support.

The law on awarding attorney fees and costs in the Sixth Circuit was definitively established in *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862

(1980). In *Alco, supra*, 522 F.Supp. at 933-34, this Court applied *Northcross* to actions under ERISA, which in § 1132(g)(2)(D) authorizes the award of a "reasonable attorney's fee", quoting extensively from the *Northcross* criteria, 611 F.2d at 638–43. No purpose would be served by requoting those criteria here.

### B.

The Court concludes:

(1) The requested hours will be reduced by 10% to reflect hours unnecessarily spent on the Health and Welfare Fund.

 The fact that a party was ultimately unsuccessful on a particular claim does not mean it loses all entitlement to fees for hours worked on that claim. *Northcross, supra*, 611 F.2d at 636. Nonetheless, certainly some of the 692 hours spent by Central States' counsel on this case were devoted to a claim eventually withdrawn as *de minimis*. It is difficult to determine which hours were unnecessarily spent on the Health and Welfare Fund; C. J. Rogers' suggestion that it was virtually 40% of total time is not supported by the record. Under the circumstances, the Court believes a 10% reduction in hours is appropriate.

(2) The requested hours will be reduced by 10% to reflect duplicitous hours.

While C. J. Rogers claims approximately 160 hours requested are for duplicitous services, Central States adequately explained most of those hours in its reply brief. A 10% reduction will adequately account for court appearances and other instances in which two lawyers appeared when one would have sufficed. For the most part, however, it appears the work of

---

**5.** Central States notes that it has incurred expenses other than attorney fees and costs attempting to collect the amounts owed by C. J. Rogers, and argues that part of the Congressional intent underlying the award of double interest was to compensate it for those costs. While it may be true that Central States incurred expenses which it will not recover in connection with this case, Congress prescribed

the available remedies in § 1132(g)(2). What the Court has done is no more than enforce the plain language employed by Congress in a common-sense fashion to apply to a particular set of facts. Nothing in the excerpts of legislative history cited by Central States indicates this interpretation is either unreasonable or inconsistent with Congressional intent.

two lawyers was justified by the scope of this case.

(3) The requested hours will be reduced by 20 hours to reflect services which could properly have been performed by para-legals.

 These hours are for phone calls, drafting of notices, sorting, etc., which could have been performed by non-attorneys. The fact that counsel chooses not to employ para-legals does not entitle it to compensation for these services at the rate applicable to attorneys. These hours will be compensated as part of Central States' expenses at an hourly rate of $12.

(4) Hours allowed will be compensated at a flat rate of $75 per hour.

C. J. Rogers suggests this was simply a collection case and the Central States' attorneys should be compensated at a rate of $40–$50 per hour. The size of the Court file and the docket entries belie that argument. While the complications in this case were for the most part accounting rather than legal problems, something more was involved than "collecting" an established debt. This Court has awarded attorney fees in prior ERISA and non-ERISA cases at rates of approximately $75 per hour. *See Alco, supra.* Nothing cited suggests that rate is out of touch with reality. In fact, not only is $75 per hour the normal billing rate for most of Central States' counsel's hours in this case, it was approximately the mean hourly rate for Michigan lawyers in private practice in 1980. *See* 61 *Mich.B.J.* 119 (February 1982). The fact that one of Central States' attorneys increased his billing rate to $100 effective April 1, 1980 does not in the Court's view entitle him to a similar increase in the award here; it is doubtful the work performed on April 2, 1980 was any more valuable than that performed two days earlier.

(5) Expenses will be allowed in the amount of $740.

Expenses will be awarded for travel in the amount of $500. The 20 hours of work which could have been performed by para-legals (*see* (3) above) will be awarded at $12 per hour. The balance of expenses are payments to third parties which may be allowable to be taxed as costs by application to the Clerk of the Court under 28 U.S.C. § 1920.

 The Court thus awards Central States an attorney fee for 532 hours of work at $75 per hour, plus expenses of $740, for a total award of $40,640.[6]

### VI.

Accordingly, the Court will enter a judgment in favor of Central States for $53,-162.59, representing unpaid contributions as of February 25, 1981 not incorporated in the judgment entered on that date. The judgment shall be deemed to have been entered on February 25, 1981 for purposes of calculating post-judgment interest. Central States is also entitled to an award of attorney fees in the amount of $39,900 plus expenses of $740 and may present an order to that effect within 10 days.

SO ORDERED.

---

**6.** The Court's general comments in Part VII(3) of *Alco, supra,* 522 F.Supp. at 934–35, are also appropriate here.