NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL 210, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND
HELPERS OF AMERICA, Respond-
ent.

No. 352, Docket 28578.

United States Court of Appeals
Second Circuit.

Argued March 13, 1964.

Decided April 6, 1964.

———◇———

Jules H. Gordon, Atty., National La-
bor Relations Board, Washington, D. C.
(Arnold Ordman, Gen. Counsel, Domi-
nick L. Manoli, Assoc. Gen. Counsel, Mar-
cel Mallet-Prevost, Asst. Gen. Counsel,
Elliott Moore, Atty., Washington, D. C.,
on the brief), for petitioner.

Charles R. Katz, New York City (Katz
& Wolchok, New York City, on the
brief), for respondent.

Before LUMBARD, Chief Judge,
SMITH, Circuit Judge, and LEVET,*
District Judge.

LEVET, District Judge:

The National Labor Relations Board
found that respondent Union violated
Sections 8(b) (1) (A) and 8(b) (2) of
the National Labor Relations Act (29 U.

* Sitting by designation.

S.C. § 158(b) (1) (A) and (b) (2))[1] by executing and maintaining a contract covering the office clerical and sales employees of Dancker & Seller, Inc. (Dancker) at a time when in fact it did not represent these employees.

The facts are not disputed. Dancker was one of approximately 14 employers forming the Office Equipment Employers Association (Association) which since 1958 recognized the Union as the bargaining representative of the warehouse employees. In 1961, pursuant to agreement with the Association entered into in February 1959, the Union was recognized as the representative of all the employers' office clerical and sales employees. In 1961 none of Dancker's office clerical and sales employees evinced any desire to join or be represented by the Union. On April 26, 1962, the Union and the Association entered into a contract (the validity of which is at issue here), containing a Union security clause covering the Association's office clerical and sales employees on a multi-employer basis. On May 12, 1962, Dancker notified its office clerical and sales employees that they were required to join the Union as a condition of employment. However, neither before nor after execution of the contract of April 26, 1962 have any of Dancker's office clerical and sales employees ever designated the Union as a bargaining representative.

The Union opposes enforcement of the Board's order on two grounds: First, it contends that on April 26, 1962 it represented a majority of the office clerical and sales employees on a multi-employer basis; second, it claims the complaint is time-barred due to the operation of Section 10(b) of the Act, 29 U.S.C. § 160 (b).

The Union relied upon an assumption that the multi-employer unit was appropriate in determining whether it represented a majority of the office clerical and sales employees on April 26, 1962, even though (1) Dancker's employees did not consent and, in fact, unanimously objected to the Union's representation, and (2) the Board had never determined that this multi-employer basis was appropriate for Dancker's employees. The issue here is whether, in entering into the contract on April 26, 1962, the Union had a right to rely on this assumption.

■ The Board was correct in finding that it was impermissible for the Union to assume the appropriateness of the multi-employer basis. The fact that multi-employer units have been held appropriate in other instances is no assurance that a multi-employer unit would have been held to be appropriate here. One basic test is whether the multi-employer unit was created with the approval, express or implied, of the employees in each of the constituent single-employer units. Here, there was unanimous opposition by Dancker's office clerical and sales employees.

■■ The Union contends that if a representation petition had been filed it would have been granted, citing Peninsula Auto Dealers Association, 107 NLRB 56 (1953). There are, however, many factors to be considered in determining whether the multi-employer unit is appropriate other than the bargaining history of the other employees in the unit. The bargaining history of one group of employees, although persuasive, does not invariably control the question of appropriateness for every other group of employees. Arcata Plywood Corporation, 120 NLRB 1648, 1651 (1958). Had a representation petition been filed, the Board would have considered not only the prior bargaining history in the Association but also the fact that, although the Union and Dancker repeatedly attempted to force Dancker's office clerical

1. Violations of Section 8(b) (1) (A) occur when a labor organization restrains or coerces employees in their rights to organize, collectively bargain, etc. as guaranteed by Section 7 of the Act. Violations of Section 8(b) (2) occur when a labor organization causes or attempts to cause an employer to discriminate against an employee in violation of Section 8(a) (3) of the Act.

and sales employees into the Union, all of the office clerical and sales employees of Dancker vigorously objected to representation by the Union. The Union and Dancker had no warrant to presume that if a petition had been filed, the Board would have granted representation. The Union cannot avoid the fact that it did not represent a majority of Dancker's office clerical and sales employees in April 1962. Mohawk Business Corporation, 116 NLRB 248 (1956).

■ This proceeding was not barred by Section 10(b), which in pertinent part provides:

"* * * [N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *."

Quite obviously, the unfair labor practice consisted in the Union's entering into the contract on April 26, 1962 when it did not represent a majority of the office clerical and sales employees of Dancker. This was a separate and distinct unfair labor practice independent of the events of 1961. Therefore, the complaint was timely issued in May 1962.

Petition for enforcement granted.