Joseph O'HARE, Albert M. Cornette, Peter Gale, Bruce A. McAllister, Robert W. Sanders, Thomas E. Moran, as Trustees of the New York Marine Towing & Transportation Industry Pension Fund and Insurance Fund, Appellees,

v.

GENERAL MARINE TRANSPORT CORP., Appellant.

No. 1353, Docket 83–7848.

United States Court of Appeals, Second Circuit.

Argued June 4, 1984.

Decided July 20, 1984.

---

Jared Stamell, New York City, for appellant.

Seymour M. Waldman, New York City (Roman Beck, Beck, Halberg & Williamson, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, of counsel), for appellees.

Before OAKES and NEWMAN, Circuit Judges, and MISHLER, District Judge.[*]

OAKES, Circuit Judge:

This is an appeal from a number of orders of the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, granting summary judgment for trustees of employee benefit pension and insurance funds and assessing damages against an employer for delinquent contributions. In essence, the court held that the trustees were owed the money, along with a double interest penalty and attorney's fees. We affirm.

The four decisions appealed from represent the most recent phase of what appears to be an endless dispute between General Marine Transport Corp. (General Marine), the owner of sludge vessels used to dispose of sewage sludge which work in the Port of New York, and the union which represents, or purports to represent, its employees, Local 333, United Marine Division, International Longshoreman's Association, AFL–CIO (Local 333). The rights and duties of the various parties to this dispute have been extensively litigated—before the National Labor Relations Board (the Board or the NLRB), a number of times before Judge Sweet, and twice recently in this court. *See Berman Enterprises Inc. v. Local 333*, 644 F.2d 930 (2d Cir.), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981); *General Marine*

[*] Of the Eastern District of New York, sitting by designation.

*Transport Corp. v. NLRB*, 619 F.2d 180 (2d Cir.1980). We assume familiarity with our previous decisions.

At issue in this case are pension and insurance trust fund payments (Fund payments) allegedly due from the employer pursuant to a collective bargaining agreement covering the period 1976–79 (the Agreement). The Agreement was between Local 333 and the Marine Towing & Transportation Industry Employees Association (the Association), an association representing shipping companies in the towing and transportation industry in the Port of New York in a multi-employer bargaining unit. Since the 1950s the collective agreements have provided for both a Pension Fund and an Insurance Fund, and since 1962 General Marine has been a member of the Association and a Fund participant.

The focus of this litigation is General Marine's contention that it withdrew from the Association after the 1976 Agreement was reached and that it therefore is not obliged to make Fund payments to the trustees pursuant to the Agreement. This issue of the validity of General Marine's attempted withdrawal from the Association in 1976 was litigated but not reached in *General Marine Transport*, 619 F.2d 180 (holding unfair labor practice charge against employer barred by statute of limitations). The district court held, as the Board had held before it, that General Marine was a party to the Agreement and that its purported withdrawal from the Association was invalid; it therefore held that the employer owed the trustees the Fund payments in question. In so holding, the court also ruled on a number of preliminary contentions raised by General Marine: that the

district court had subject matter jurisdiction over this action, that the action was not barred by res judicata, that the suit was not barred by the statute of limitations, and that the suit was not barred because the trustees failed to exhaust their administrative remedies. In a separate opinion the court calculated damages in a manner challenged by General Marine, and also, on cross motions for summary judgment, dismissed General Marine's counterclaim having to do with certain related Fund payments made by General Marine to the Fund. We affirm the district court's opinion in all respects.

### Facts

The relevant history of the bargaining between the parties is set out in *Berman Enterprises*, 644 F.2d at 932–34. Briefly put, in 1976 General Marine's president, Evelyn Berman Frank, signed a written form authorizing the Association to bargain with Local 333 on General Marine's behalf, as it had since 1962. In the course of the negotiations, Local 333 proposed, and the Association accepted, two contract provisions authorizing practices which General Marine had in the past found objectionable, so-called "vegetable oil" and "subsidiaries and affiliates" clauses.[1] Although given a chance by Local 333 and the Association to withdraw from the Association because of these clauses, General Marine chose to remain in the Association. The Agreement was signed on March 26, 1976, and became effective on April 1.[2]

On April 13, 1976, General Marine notified the Association and Local 333 that it did not consider itself bound by the Agreement because the contract exceeded the

---

1. Before 1976, Local 333 had sought to require General Marine and a number of other affiliated companies to cease towing certain unmanned barges carrying animal, vegetable or fish oil. The employers resisted, and the question was eventually litigated, with General Marine obtaining a favorable result. *See Berman Enterprises*, 644 F.2d at 932–33. The "vegetable oil" clause at issue here presented another attempt by Local 333 to impose this limitation on General Marine. The "subsidiaries and affiliates" clause requires affiliates of Association

members to operate under the terms of the contract. The clauses are reprinted at *id.* nn. 3, 4.

2. The Agreement was signed by a representative of Local 333 on behalf of the employees and a representative of the Association on behalf of the participating employers. Individual employers did not sign the Agreement, though their names were listed at the bottom of the Agreement.

authority of the Association to negotiate on its behalf. In particular, General Marine objected to the "vegetable oil" and the "subsidiaries and affiliates" clauses. As of April 1, General Marine stopped making contributions to either the Insurance or the Pension Fund for its employees.

The dispute about the "subsidiaries and affiliates" clause, which is relevant to the counterclaim and to one of General Marine's substantive defenses, involves a long-standing argument between General Marine and Local 333 concerning the employees covered by the 1973–76 agreement. General Marine is one of three subsidiary companies, along with Berman and Standard Tank, which operate barges in New York harbor and which are all owned by the Berman family. Only General Marine employees were explicitly covered by the Association-Local 333 agreements. The situation was complicated, however, by the Berman family's practice of having employees on the payroll of one affiliate work from time to time aboard vessels owned by another affiliate. When General Marine employees worked aboard Berman vessels, their employer treated them as were subject to the salary and other provisions of a contract covering Berman, rather than General Marine employees, but General Marine made payments to the Funds on their behalf as dictated by the agreement with Local 333.

Local 333 sought to have all Berman family employees, or, failing that, at least all employees on General Marine's payroll, determined to be members of Local 333 and bound by the Agreement. The issue was litigated before the Board, and General Marine obtained favorable results. In particular, it was determined that Berman employees were not covered by the Agreement, and that there was no "contract bar" preventing the Berman employees and the General Marine employees working on Berman vessels from holding an election to choose a bargaining representative. An election was held, and the employees in question chose to be represented by a non-Local 333 union, the Marine Engineers Beneficial Association (MEBA). These employees were then expelled from Local 333. Questions involving the representational status of all Berman family employees were, or at least should have been, resolved.

After the representational questions had been resolved, Local 333 filed unfair labor practices charges with the Board concerning General Marine's repudiation of the Agreement as regards General Marine employees working on General Marine vessels—the only employees whom the Board found were members of Local 333. The Board held that General Marine was bound by the Agreement as regarded these employees and had therefore committed an unfair labor practice by attempting to repudiate it. This court then denied enforcement of the Board order, on the procedural ground that the union had not filed the charge within the six-month statute of limitations of section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b) (1982). *General Marine Transport Corp.*, 619 F.2d 180. The trustees were not parties to that action.

Subsequently, General Marine and its affiliates sued the Association, many of its members, Local 333, and the trustees, in federal district court, asserting that the Agreement, and in particular the "vegetable oil" and "subsidiaries and affiliates" clauses were illegal and constituted a group boycott in violation of the antitrust laws. The trustees counterclaimed to recover the Fund payments at issue here, but before trial the claims against the trustees were voluntarily dismissed, and the counterclaim was dismissed and subsequently reasserted in the separate complaint which was litigated below. A jury resolved the antitrust suit in favor of the defendants, a verdict which was upheld on appeal. *Berman Enterprises*, 644 F.2d 930.

The present suit, evolving from the counterclaim in the antitrust suit, sought recovery of the unpaid Fund contributions due for the General Marine employees working on General Marine vessels, including interest and attorney's fees pursuant to section

502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. General Marine counterclaimed seeking repayment to it or to a receiver for certain funds paid to the trustees in the 1973–76 period for the General Marine employees who worked on Berman vessels who, after the 1976 representation election was held, chose to join the MEBA.

The suit was litigated in five stages and resulted in four decisions. Initially the court on cross motions for summary judgment ruled that General Marine was liable for the unpaid contributions. A separate damages trial was then held, at which time the court granted the trustees' motion to dismiss the counterclaim, 564 F.Supp. 1064. The court awarded the trustees $87,903.46 in pension and health insurance contributions, and $154,404.98 in double interest. Next General Marine moved to have the first decision reconsidered in light of *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), arguing that in light of that decision the suit should have been dismissed as time barred. The court reconsidered its decision but held that the six month statute of limitations the Court held applicable in *DelCostello* did not apply in this instance, 578 F.Supp. 72. Finally the court awarded $71,694.37 in attorney's fees and costs to the trustees as prescribed by ERISA.

On appeal General Marine challenges each one of the district court's determinations. We will address each of its objections, dealing first with its jurisdictional and procedural objections, then with its objections as to the finding of liability and the assessment of damages and attorney's fees, and finally to its objections to the court's dismissal of the counterclaim.

### Discussion

■ *Jurisdiction.* General Marine asserts that the district court lacked jurisdiction to decide the question whether General Marine was a party to the Agreement. It argues that the district court found that it never entered into a contract, and that in the absence of such a contract the court lacked jurisdiction to entertain a section 301 suit between non-contracting parties. *See, e.g., Aacon Contracting Co. v. Association of Catholic Trade Unionists*, 178 F.Supp. 129, 129–30 (E.D.N.Y.1959), aff'd, 276 F.2d 958 (2d Cir.1960).

The short answer to this argument is that it grossly mischaracterizes the factual findings of the district court. The court did *not* hold that General Marine illegally refused to execute the contract. Rather the court explicitly held that there *was* a valid contract between the parties and that General Marine attempted to repudiate the contract:

> [T]he April 13 repudiation was an ineffective termination of the agreement for collective bargaining purposes and General Marine, as of that point, remained bound by the agreement.... The April 13 Frank letter after the contract had been agreed upon, was untimely and also ineffective under federal labor law and policies.

The court therefore did not order the execution of a labor contract, a remedy that concededly lies exclusively within enforcement power of the National Labor Relations Board. *E.g., Wm. Chalson & Co. v. Amalgamated Jewelry Workers Local No. 1*, 478 F.Supp. 1103, 1108 (S.D.N.Y.1979).

The court concluded that the facts made out a classic section 301 case of breach of a labor contract, and correctly based its jurisdiction on that statute. The fact that the court relied on federal labor law principles derived from NLRB adjudications in order so to categorize the dispute and subsequently in order to rule on the substantive issues raised does not deprive the court of jurisdiction under section 301. *See Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). *Evening News* makes clear that courts in section 301 suits are entitled to consider facts that may also make out an unfair labor practice within the competence of the NLRB. *See Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29

L.Ed.2d 473 (1971). Insofar as General Marine's jurisdictional argument constitutes an indirect attack on the district court's factfinding and characterization of this action, for reasons we will fully discuss later we find the court's factfinding amply supported by the evidence on the record.

■ *Res judicata.* General Marine asserts that this court's prior holding in *General Marine Transport,* 619 F.2d 180, presents a res judicata bar to the current litigation. In that case it was determined that Local 333's unfair labor practice charge brought by the Board against General Marine, asserting that General Marine was not entitled to repudiate the Agreement, was time barred. The district court agreed that the two actions involved the same core of operative facts (General Marine's participation in, and attempted repudiation of, the Agreement), and that a ruling in Local 333's favor in the first action would have resulted in the trustees' recovering at least some of the damages they seek in the present action. The district court nonetheless ruled that res judicata did not apply because both the parties and some of the issues were different in the two suits, and the contract issue, though litigated, was not necessarily determined in the earlier action.

We agree fully with the district court's resolution of the res judicata argument. The trustees, plaintiffs in this suit, were not a party to the earlier action, nor could they be considered privies to Local 333 as a matter of law by virtue of the divergent responsibilities of pension or insurance fund trustees and union officials and lack of any showing of an agency relation. *Cf. NLRB v. Amax Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981) (employer-selected trustees of trust fund are not "representatives" of the employer for purposes of the National Labor Relations Act); *NLRB v. Truck Drivers Local Union No. 449,* 728 F.2d 80 (2d Cir.1984). To the extent that *National Benefit Fund for Hospital and Health Care Employees v.* *Presbyterian Hospital,* 448 F.Supp. 136 (S.D.N.Y.1978), suggests a contrary result, we decline to follow it.

■ Moreover, there was simply never a prior holding on the scope of the Agreement and the effect of General Marine's attempted revocation which could bar future litigation on this question. All that was fully litigated in *General Marine* was the question how the six month statute of limitations applicable for unfair labor practice actions was to be tolled in the context of Local 333's unfair labor practice charge brought to the NLRB. The underlying contract question reached by the Board was not reached on the appeal in *General Marine.* This is a section 301 action, which, as we discuss *infra,* is governed by a different statute of limitations period, so the prior statute of limitations determination in *General Marine* does not act as a res judicata bar to the present action.

■ *Limitations period.* General Marine asserts that under the rule established in *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the six month limitation period of 29 U.S.C. § 160(b) should be applied to this section 301 suit. If that limitations period did apply, the suit would concededly be time barred under the facts as found in *General Marine,* 619 F.2d 180.

*DelCostello* held that the six month limitations period of the NLRA should apply to hybrid section 301/fair representation cases since they closely resemble employee unfair labor practice actions which are governed by that limitations period. However, this suit much more closely resembles the traditional section 301 breach of contract action that has in the past been governed by analogous state contract law limitations, in this case New York's six year limitations period. N.Y.Civ.Prac.Law § 213, subd. 2 (McKinney 1972). *See Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). *DelCostello* itself quoted with approval the

holding in *Hoosier Cardinal*,[3] and we agree with the district court that the *DelCostello* holding turns on the particular nature of the duty of fair representation action, and cannot reasonably be expanded to all section 301 claims that involve facts which might also have established an unfair labor practice charge.

■ *Exhaustion of administrative remedies.* Appellant claims that the suit should be barred because the trustees failed to make use of the arbitration procedures available to them in the agreement. The existence of a duty of trustees to arbitrate claims for unpaid contributions before pursuing judicial remedies is to be determined by analyzing the collective bargaining agreement and trust agreement to see whether they call for such arbitration. *Schneider Moving & Storage Co. v. Robbins,* ―― U.S. ――, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). Here the court undertook such analysis and determined that the Agreement's general arbitration provision did not apply to the trustees, since it explicitly referred only to claims by the employer, the union, or the Association. Since one specific arbitration provision did allow trustees to arbitrate when the *amount* of a delinquency was in issue, the court reasoned *expressio unius* that the exclusion of the trustees from all other parts of the arbitration section was intentional. The court's construction of the agreement is sound, especially in light of *Schneider Moving Co.,* decided after the district court's decision here. It is not even argued that the trust agreements themselves make the question(s) arbitrable.

*The merits.* The district court found that General Marine was a party to the Agreement signed by the Association on its behalf. It based this conclusion on the fact that Mrs. Berman gave written authorization to the Association to negotiate on behalf of General Marine as well as on the fact that Mrs. Berman later reaffirmed her intention to remain in the Association and be bound by the Agreement in spite of the inclusion of the two clauses to which General Marine objected. General Marine's name was listed as one of the employers on behalf of which the Agreement was signed, and the Agreement became effective at the expiration of the prior agreement, binding General Marine after it was signed, *see supra* note 2, on March 26, 1976.

■ General Marine argues that it never executed the Agreement since it repudiated it by letter on April 13 and stopped making Fund payments on the supposed effective date of the Agreement, April 1. However, the district court correctly, if implicitly, found that it was not up to General Marine to "execute" the agreement, at least in the sense of agreeing to be bound by it after it was signed. It had previously agreed to have the Association act as its agent, and when the Association's representative signed the Agreement, at that point General Marine, and all the other represented employers, were bound by it. To suggest otherwise is to ignore the past practice and clear understanding of the employers who made up the Association, as well as any coherent principles of agency law generally[4] or particularly in the context of the federal labor law. As we have indicated, *supra* note 2, individual employers did not sign onto the Agreement, nor was there any formal or informal device or procedure whereby they had a right to accept or reject it after it

---

**3.** The following language from *Hoosier Cardinal* was quoted with approval in *DelCostello:*

The presnet suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to

decide, .... 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7.

103 S.Ct. at 2289–90 (citations omitted).

**4.** Under general common law agency principles, a principal is not entitled to repudiate its agent's authority after a contract entered into by the agent on behalf of the principal is executed and has become effective. *See Restatement (Second) of Agency* §§ 124A, 125 (1958).

was signed by the Association on their behalf.

■ The court next found as a matter of federal labor law that Evelyn Frank's April 13 letter of repudiation was an ineffective termination of the Agreement and that, therefore, General Marine remained bound by that agreement. The court reached this conclusion by applying the labor law principle that an employer may not, barring "unusual circumstances," withdraw from a multiemployer bargaining unit without mutual consent once the negotiations have commenced. *E.g., Charles D. Bonanno Linen Service, Inc. v. NLRB,* 454 U.S. 404, 410–11, 102 S.Ct. 720, 724, 70 L.Ed.2d 656 (1982); *NLRB v. Paskesz,* 405 F.2d 1201 (2d Cir.1969).

Federal courts are at times obligated to apply labor law principles in adjudicating claims under independent statutory grounds of jurisdiction. *See, e.g., Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 85, 102 S.Ct. 851, 860, 70 L.Ed.2d 833 (1982); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In this case the district court applied those principles correctly; indeed, it reached the same conclusion on the same reasoning as the Board did in the order that was vacated by this court on statute of limitation grounds. *General Marine Transport,* 619 F.2d 180.

General Marine argues that in any event it was entitled to repudiate the agreement (or, as it would have it, entitled to refuse to execute the agreement), because the "unusual circumstances" exception should have been applied in this case, since the Association had entered into an agreement that covered unrepresented employees, *see NLRB v. Local 210, International Brotherhood of Teamsters,* 330 F.2d 46 (2d Cir. 1964), and had thus exceeded its authority to negotiate on behalf of General Marine. General Marine points to the disputed "vegetable oil" and "subsidiaries and affiliates" clauses as evidence that the Association had exceeded its authority and purported to bind unrepresented employees.

■ While it is true that there are "unusual circumstances" which could justify a repudiation in this context, *see, e.g., NLRB v. Siebler Heating & Air Conditioning, Inc.,* 563 F.2d 366 (8th Cir.1977), *cert. denied,* 437 U.S. 911, 98 S.Ct. 3104, 57 L.Ed.2d 1142 (1978), General Marine's argument fails here on a number of grounds. Even assuming, arguendo, that the two disputed clauses are illegal,[5] none of the employees for whom the employer withheld Fund contributions is in any way involved in the dispute about the two clauses,[6] so that even if the clauses are invalid this would not justify the nonpayments at issue here under the "unusual circumstances" exception, nor make the entire contract unenforceable and void. *Cf. Lewis v. Seanor Coal Co.,* 382 F.2d 437, 440–41 (3d Cir. 1967) (a "hot cargo" provision would not make entire agreement void and unenforceable), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968). Neither an invalid contract provision nor a union unfair labor practice constitutes a defense to a trustees' suit for unpaid contributions unless the illegality lies in the trust provision sued on. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–86, 102 S.Ct. 851,

---

5. This court has held that the two clauses do not violate the antitrust laws. *Berman Enterprises,* 644 F.2d 930. However, the Regional Director of the Board refused to issue a complaint brought by Local 333 against General Marine concerning General Marine's abrogation of the 1976–79 Agreement before the representation question concerning the General Marine employees on Berman vessels had been settled. She did so because she found that the "subsidiaries and affiliates" clause was an attempt to include employees not in the bargaining unit, and because she found that the vegetable oil clause was a "hot cargo" clause in violation of section 8(e) of the NLRA, 29 U.S.C. § 158(e) (1982).

6. The vegetable oil clause affects only Berman since only Berman tows vegetable oil barges. The "subsidiaries and affiliates" clause does not purport to bind any of the General Marine employees for whom pension and insurance payments are being sought, since these employees are all General Marine employees working on General Marine vessels and were Local 333 members.

859–860, 70 L.Ed.2d 833 (1982); *cf. Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) (union breach does not give rise to defense against duty to contribute to welfare fund).

Nor is this a case like, *e.g., ILGWU v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), where an entire contract was found unenforceable because the union did not have majority support of the people on whose behalf it purportedly was bargaining. *See also Mohawk Business Machines Corp.*, 116 NLRB 248 (1956). Such a mistake obviously would infect the entire contract. Here, whatever problems there are with the "subsidiary and affiliates" clause do not affect the obligations General Marine has toward its employees clearly represented by Local 333 whose pensions are at issue here. Nor does the fact that Local 333 may have violated a no-strike clause, thereby, in General Marine's view, ending its obligations to the union, relieve General Marine of its obligations to the trustees in the absence of agreement to this effect. *Lewis v. Benedict Coal Corp., supra.* In sum, we agree with the district court that General Marine's termination was ineffective, and it therefore remained obliged to make Fund payments during the 1976–79 period.

◼ *The damage award.* General Marine makes numerous objections to the $314,000 awarded the trustees as damages in this action. First it argues that since it provided alternate insurance coverage for its employees during the time in question, and because the trust therefore did not have to pay for insurance for the covered General Marine employees during that time, it should not be held liable to the Insurance Fund for unpaid contributions. However, the Agreement did not give General Marine the right to choose to whom it would make insurance payments. It was obliged to pay into the Funds established by the Agreement. The multiemployer Fund, which purchases a form of group insurance, is contractually required to keep the group intact, and the fact that appellant's improper conduct now requires it in

essence to pay twice is simply irrelevant as regards its obligation to the Fund. *See Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir.1982) (employer's obligation to make contributions to trust fund on behalf of employees for whose benefits employer paid cash); *Local 9, International Union of Operating Engineers v. Siegrist Construction Co.*, 458 F.2d 1313, 1316 (10th Cir.1972).

◼ General Marine next objects to the fact that the court awarded the trustees prejudgment interest at the rate set out in the Agreement—2% above the prevailing rate charged by Citicorp Bank. It argues that such a rate constitutes punitive liquidated damages and it should therefore not be enforced as against public policy.

However, section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), explicitly states that "interest on unpaid contributions shall be determined by using the rate provided under the plan" or if none is specified a statutorily prescribed rate based on an adjusted prime rate figure. 26 U.S.C. § 6621 (1982). The statute itself allows plans to include a 20% liquidated damages provision, 29 U.S.C. § 1132(g)(2)(C)(ii), so it could hardly be considered against public policy for the parties to agree to a rate of 2% above the prime rate.

◼ General Marine also objects to the court's awarding the trustees double interest and attorney's fees pursuant to 29 U.S.C. §§ 1132(g), 1145, which mandate these damages for suits to enforce the terms of plans. Those sections were added to the statute in a 1980 amendment to ERISA. This suit was instituted before 1980, and General Marine argues that the statute should not be applied to it retroactively.

The district court applied the general rule that a court applies the law in effect at the time it renders its decision unless doing so would result in a manifest injustice or would be contrary to legislative intent. *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Finding no injustice or

contrary legislative intent, it applied the 1980 amendments, relying on other decisions that have also applied them in this context. *See Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919 (E.D. Mich.1981). *See also San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo,* 664 F.2d 1344, 1346 (9th Cir. 1982); *cf. Bugher v. Consolidated X-Ray Service Corp.,* 705 F.2d 1426 (5th Cir.1983) (applying the 1974 ERISA attorneys' fees provision to a suit initiated pre-ERISA), *cert. denied,* — U.S. —, 104 S.Ct. 2391, 81 L.Ed.2d 348 (1984). *But see Hammond v. James W. Griffin Co.,* 520 F.Supp. 162 (N.D.Ga.1981).

General Marine's argument is that section 1132(g)(2) is not merely an additional remedy imposed on already proscribed conduct, but rather that it is a provision which creates a new violation of federal law, since it specifically penalizes violations of 29 U.S.C. § 1145, a section that was also added in 1980. It would therefore be unjust, it argues, to impose a penalty for conduct that would not have subjected it to federal liability when it was committed.

Whatever the strength of this argument as a matter of law, *cf. generally Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* — U.S. —, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (not unconstitutional for Congress to impose withdrawal liability retroactivity), it misstates the facts. A default in fund contributions *would* have subjected General Marine to federal liability before the 1980 amendments, albeit under a different statutory provision. *See* 29 U.S.C.A. § 1132 (1975) (pre-amendment); *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). The 1980 amendments in this regard did not penalize conduct which was previously not subject to federal liability, they merely changed the remedial scheme somewhat by *requiring* the award of interest and attorney's fees where previously those remedies were assessed at the discretion of the trial judge. *See Alco,* 522 F.Supp. at 922–23. The amendments also provided for a double interest payment or alternative liquidated

damages to compensate the fund for costs incurred in connection with delinquencies. *Id.* at 928.

■ Moreover, the fact that the complaint was not formally amended to allege a violation of new section 1145 does not make application of the new statutory penalty inappropriate or unfair, as General Marine asserts. The applicability of the double interest provision was fully briefed and argued below, so appellant can hardly argue that it was not on notice of the claim. Moreover, the court was entitled to enter whatever relief it felt appropriate at the trial, whether or not it was requested in the pleadings. Rule 54(c), Fed.R.Civ.P.; *Newburger Loeb & Co. v. Gross,* 611 F.2d 423, 432–33 (2d Cir.1979) (awarding prejudgment interest).

■ Finally, General Marine objects to the court's decision to award attorney's fees to the trustees pursuant to section 1132(g) for costs incurred defending the counterclaim, arguing that it is not properly part of the "action" to enforce plan payment for which fees are authorized under section 1132(g)(2). However, the counterclaim was between the same parties, grew out of the same general contractual dispute, and, if successful, would have stopped the trustees from collecting any damages in the original suit, as it sought recovery of a sum greater than that sought by the plaintiffs. In those circumstances, the court was entitled to award attorney's fees to the trustees to defend the counterclaim, and indeed appellant points to no case law or statute which suggests otherwise. It was part of the same action.

*The counterclaim.* General Marine's counterclaim seeks repayment from the trustees for around $200,000 of health insurance and pension contributions made to them during 1973–76 for the General Marine employees who worked on Berman vessels. General Marine asserts that these employees were never properly part of Local 333 or therefore attorned to the 1973–76 agreement, and that the payments made for those employees pursuant to that

agreement should never have been made and did not benefit those employees. It requests that the money be returned and placed with an independent receiver.

General Marine rests its argument on two grounds relating to alleged violations of LMRA section 302(c)(5), 29 U.S.C. § 186(c)(5) (1982).[7] First, it asserts that, pursuant to section 302(c)(5)(B) as interpreted by *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir.1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), the contributions should never have initially been made to the Funds. Second, it claims that the contributions now will not be used "for the sole and exclusive benefit of the [covered] employees" as required by section 302(c)(5), and so should be returned to a receiver to be used for the benefit of the employees.

■ Initially, as the district court noted, there is a substantial standing barrier to General Marine's making these claims at all, in particular in making its second claim. General Marine has no personal stake in the outcome of this controversy, *e.g.*, *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975). If it were to prevail, a receiver would have to be appointed to hold the money for the benefit of either the affected employees or the MEBA trust. General Marine neither alleges that it was injured in any way by its purportedly improper payments, nor that it will gain in any way if it succeeds in the counterclaim. Nor is it in a position as an employer to sue on behalf of its former employees. *See Fire Equipment Manufacturers' Association, Inc. v. Marshall*, 679 F.2d 679, 681, 683 (7th Cir.1982) (OSHA standards), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983). None of the cases General Marine relies upon were brought alone by an employer—in each case either a trust fund, a union, or groups of employees

have participated when a trust fund is sued on the ground that some other fund or group of employees is entitled to money that has been deposited in the fund.

■ But even if as settlor of the trust General Marine has standing, the district court correctly concluded that General Marine was not entitled to recover on the counterclaim. Under section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B), an employee benefit fund may not accept contributions from an employer unless the employer is party to a written document specifying the basis for the contribution. *Moglia*, 403 F.2d 110. General Marine argues that the employees in question were found not to have been covered by the 1973–76 agreement, so that there was no written agreement authorizing the payments, and the money should therefore be returned to it.

The argument is that the Board made a determination that there was no contract bar to holding a representational election for all employees who worked on Berman barges, including those at issue here who were on General Marine's payroll at the time. Thus it is argued that there was no valid written agreement with Local 333 covering these General Marine employees working on Berman barges which would allow General Marine to contribute to the Funds for these employees.

However, the Board's determination that there was no contract bar to holding a representational election is not equivalent to a holding that for all purposes there is no valid written agreement between the employees and another bargaining representative. *See The Kroger Co.*, 165 NLRB 872 (1967); *General Extrusion Co.*, 121 NLRB 1165 (1958). The "contract bar" doctrine is a prudential concept used by the Board for representational election purposes only. Here there clearly *was* a writ-

---

**7.** (c) Exceptions

The provisions of this section shall not be applicable ...

(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive ben-

efit of the employees of such employer, ... *Provided,* That ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer....

ten agreement covering all of General Marine's employees, including the employees in question here, at least as regards Fund payments. As the district court noted, each month General Marine submitted contributions to the trustees along with written and signed records stating that given amounts of contributions were being made for all their employees, including those who were working on Berman vessels. The Fund paid all benefit claims for these employees, and the Pension Fund has given full eligibility and pension credit for the entire period. The situation deemed not to give rise to a contract bar here is nothing like that in *Moglia,* where an employee's widow unsuccessfully sought to recover pension payments. There the trustees refused to pay the funds to the alleged beneficiary, successfully contending that the employee's employer had never entered into a collective bargaining agreement or a pension trust with the union. Here the trustees have paid out all the claims for the employees in question, and there is no question that General Marine had a valid contract with Local 333 and that the employees in question were on General Marine's payroll.

General Marine's second and more substantial argument is that the retention by the Funds of contributions made on behalf of these employees violates that part of section 302(c)(5) which requires that an employer's contributions must be "for the sole and exclusive benefit of the employees of such employer...." General Marine contends that section 302(c)(5) requires that a voluntarily departing group of employees be permitted to take a portion of the pension fund with them, either through direct repayment of contributions or through segregation of assets to be administered by a court-appointed administrator. *See Local 50 Health Benefits Fund v. Local 3 Welfare Fund,* 733 F.2d 229 (2d Cir.1984); *Alvares v. Erickson,* 514 F.2d 156 (9th Cir.),

*cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975).

However, this is not a case like *Local 50* or *Alvares* where an entire group of employers and their employees (*Alvares*), or all of an employer's employees (*Local 50*) have left a fund en masse creating a great distortion in the organization and financing of the Funds.[8] In those cases the "failure to transfer the portion of its reserves attributable to [the departing employer's contribution means that] ... *none* of [the employer's] employees will benefit at all from [the employer's] contributions." *Local 50,* 733 F.2d at 236 (emphasis in original). It was precisely on that ground that *Local 50* was distinguished from *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), where it was held that section 302(c)(5) did not otherwise impose a reasonableness requirement on welfare plan provisions. *Id.* at 570–76, 102 S.Ct. at 1231–1234.

Here some employees once on General Marine's payroll voluntarily chose to join a different union and therefore a different welfare and pension plan. Other employees remained on General Marine's payroll and remained members of Local 333 and fund participants. To claim that monies retained by the Funds contributed by an employer on behalf of all its employees is not contributed "for the sole and exclusive benefit of the employees of such employer" whenever some of the employees choose to leave the union and fund would be an unfair and unrealistic construction of section 302(c)(5). This is especially true when considering pension funds, where financing is based on long-range actuarial projections and vesting requirements which assume that some employees for whom contributions are made will never be eligible for benefits. *See, e.g., Aitken v. IP & GCU-Employer Retirement Fund,* 604 F.2d 1261, 1267–68 (9th Cir.1979); 29

**8.** Most problems created by employer withdrawal from multi-employer pension plans have subsequently been resolved by statute in the Multiemployer Pension Plan Amendments Act of 1980, which, however, did not apply to changes in bargaining representation occurring before April 29, 1980. See 29 U.S.C. §§ 1415, 1461(e)(2)(A) (1982).

U.S.C. § 1053 (1982).[9]  Here the employees in question received pension credit for the entire period in question.  Some of these employees already have vested pension rights and others may achieve vesting under the terms of the plan while members of the MEBA.  Simply put, section 302(c)(5) does not require that when a small number of employees leave a large multiemployer unit, pension funds, by virtue of that circumstance alone, must return money contributed on their behalf to the employees or their new funds.

Judgment affirmed.

9.  It is worth noting in this regard that neither *Local 50* nor *Alvares* involved pension funds, both being suits to recover welfare fund reserves.