329 F.2d 789
 GENERAL WAREHOUSEMEN AND EMPLOYEES UNION NO. 636
v.
AMERICAN HARDWARE SUPPLY COMPANY, otherwise known as
American Hardware Stores,a Pennsylvania
Corporation, Appellant.
 No. 14467.
 United States Court of Appeals Third Circuit.
 Argued Nov. 22, 1963.
Decided March 25, 1964, Rehearing Denied April 23, 1964.
 
 Thomas N. Griggs, Pittsburgh, Pa. (Griggs, Moreland, Blair & Douglass, Malcolm Anderson, David B. Fawcett, Donald C. Bush, Pittsburgh, Pa., on the brief), for appellant.
 Ben Paul Jubelirer, Pittsburgh, Pa., for appellee.
 Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 Plaintiff ('Union') commenced this proceeding against the employer ('Company') pursuant to Section 301(a) of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C. 185(a)[1] to compel arbitration. The District Court denied Company's motion for summary judgment and granted that of Union; resulting in the instant appeal.
 
 
 2
 Company maintained its warehouse and office in Allegheny County, Pennsylvania. By a contract between Company and Union, effective September 8, 1960 and until July 1, 1963, union was recognized as the exclusive bargaining agent for Company's employees at its warehouse located in Allegheny County, except management and supervisory personnel, sales representatives, office employees, janitors and watchmen.
 
 
 3
 The contract provided in Article II, that management of Company, direction of its working force and company operations, the right to introduce, alter or abolish methods and facilities and the right to establish and maintain rules of operation and working practices shall be vested in Company. It also provided that 'should any dispute arise concerning this Article, it shall be processed through the grievance procedure.'
 
 
 4
 The contract contained a 'no strike, no lock out' provision, subject to the agreement for arbitration. Article III of the contract set out a detailed grievance procedure with provision for arbitration, the Article being applicable to 'Differences and disputes * * * as to the meaning and application of, or compliance with, the provisions of this Agreement.' Article VI provided for seniority.[2] Article XII[3] provided that when, in the judgment of the company, it decided to discontinue operation of any portion of its warehouse, a severance allowance was payable to an employee permanently terminated unless the Company offered, and the employee affected elected to accept, a job in a job classification to which his seniority and ability qualified him.
 
 
 5
 On January 27, 1961, Company notified Union that it planned to remove its warehouse to Butler County, Pennsylvania, in November, 1961, when construction of a proposed warehouse there would be complete. Union, by letter of its counsel, asked Company whether it proposed to permit its present warehouse employees to follow the warehouse operation. Receiving no reply, counsel again wrote to Company stating that if no reply was forthcoming, the assumption would be made that the Company did not intend to afford its warehouse employees the opportunity to follow their work, and arbitration was therefore requested under Article III of the collective bargaining contract. Company replied refusing arbitration on the grounds that Union's representation under the contract was limited to employees of Company employed in Allegheny County and that Company had the right of severance set forth in Article XII.
 
 
 6
 In June, 1961, Company gave its warehouse employees at the Allegheny County warehouse notice of the advancement of the completion of its Butler County construction to September, 1961. Union, in August, by telegram to Company, took notice of the fact that Company had employed new personnel in the Butler County warehouse, referred a telephone request that laid-off employees of the Allegheny County warehouse be given preference under the seniority clause of the contract, which request was not answered, reiterated the request and further sought arbitration under the contract. Company replied by referring to its previous letter to Union's counsel.
 
 
 7
 Thereafter, Company terminated the employment of approximately 68 of its warehouse employees in groups at the Allegheny County warehouse. It presented to each employee a check which included his weekly pay, pro rata vacation pay, and severance allowance. These checks were received under protest, with demand for separate checks for the several items included by Company in the single check. Many of the employees had previously applied for employment in the new Butler County warehouse, but were refused.
 
 
 8
 The District Court held that an arbitrable issue was presented since Union contended that Company did not have the right, during the contract period, to bring about the discharge of the covered employees by removing their work to another warehouse where new employees were hired, and Company contended that it had the right under the contract to discontinue operations. Accordingly, it granted Union's motion for summary judgment.
 
 
 9
 We are of the opinion that the District Court was entirely correct.
 
 
 10
 Company contends that an arbitrable issue is presented only when the language of the agreement is not plain on the merits of the controversy. But arbitration is a contractual procedure. In the light of such cases as United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), we think it would be error to succumb to the enticing temptation to determine at the outset whether the asserted controversy is palpably unfounded on its merits. If the parties, for their own good reasons, have bargained for determination of controversies by arbitration rather than by a court, such agreement must prevail. The grievance procedure is a part of the continuous collective bargaining process, and in effectuation of that process the court has the duty only to determine whether the reluctant party has breached its promise to arbitrate.
 
 
 11
 Here, Company agreed to arbitrate all 'differences and disputes as to the meaning and application of, or compliance with, the provisions of the agreement.' Even matters reserved to management were subject to the grievance procedure. Neither these clauses nor the 'no strike clause' contained an exception. The case is, therefore, within the decision of the Supreme Court in the American Mfg. Co. case.
 
 
 12
 There, the Court rejected the proposition advanced by Company in this case, that if the meaning of the provision of the contract sought to be arbitrated is beyond dispute there is nothing to arbitrate. Said the Court, 363 U.S., at pages 567-569, 80 S.Ct., at page 1346, 4 L.Ed.2d 1403:
 
 
 13
 'The collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious. In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for. 'The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware. * * * When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal.'
 
 
 14
 Here, Company insists that an employee lost his seniority under Article VI when his employment was permanently terminated under Article XII, and under that Article Company, in its sole discretion, could terminate the employment when it decided to discontinue operation of any portion of its wholesale house. Union contends that Company violated the contract and its intent by farming out or transferring a substantial portion of its warehousing to another county, without giving its employees the right to follow the work. Plainly, there is a dispute between the parties as to the 'meaning, and application of, or compliance with' the contract.
 
 
 15
 In preservation of the unfettered arbitration agreed upon by Company and Union, it behooves us to refrain from developing the arguments presented in their respective briefs for the purpose of demonstrating that the issues presented are above suspicion as mere frivolous claims.
 
 
 16
 Company contends that Union is late in commencing this proceeding, and that the acceptance of the severance pay terminated the employment so that no right to ask for arbitration remained.
 
 
 17
 In the light of the admonition against 'preoccupation with ordinary contract law', 363 U.S. at page 567, 80 S.Ct. at page 1346, 4 L.Ed.2d 1403, we agree with the District Court that these contentions may be appropriately asserted by Company in the arbitration proceedings. They do not affect the essential conclusion that Company and Union have committed themselves to arbitration with respect to persons who were employees while the contract was in effect and when the demand for arbitration was made, where, as here, the subject of the dispute concerns the 'meaning and application of, and compliance with' the contract.
 
 
 18
 For the reasons stated the judgment of the District Court will be affirmed.
 
 
 
 [1]
 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.'
 
 
 [2]
 'Article VI-- Seniority
 '(a) Employees shall be regarded as temporary employees for the first thirty (30) days of actual employment, and there shall be no Company responsibility for the re-employment of such temporary employees if they are laid off or discharged during this thirty (30) day period. The Company, if not sure of a new employee's progress at the end of the thirty (30) day period, may request a thirty (30) day extension of this trial period from the union. If any employee is retained after sixty (60) days, his seniority shall be fixed from his actual date of employment.
 '(b) In the event that employees are laid off on account of reduction in force, employees will be laid off in accordance with seniority rights based on the length of service, with the following exception:
 'The Shop Steward, regardless of his actual length of service shall have top seniority in the plant insofar as lay-offs are concerned.
 '(c) In the event an employee is laid off due to a reduction in force becoming necessary, the Company will furnish to the employee laid off such reference and recommendation as the facts in each case may justify. When and if additional help is required, such employees so laid off shall be re-employed in preference to outsiders, providing their services are available to the Company within seventy-two (72) hours after notice to the Shop Steward, and written notice by registered mail, sent to the employee at said employee's last address as furnished to the Company by said employees.
 '(d) An employee laid off due to a reduction in force shall retain his seniority for a period of twelve (12) months.
 '(e) An employee shall be taken off the seniority list at once and no longer regarded as an employee of the Company for any of the following reasons:
 '1. If the employee quits.
 '2. If the employee is discharged.
 '3. If the employee fails to report for work from a lay-off within seventy-two (72) hours from the date of the registered letter notifying him to do so.
 '4. If the employee is severed in accordance with Article XII of this Agreement.'
 
 
 [3]
 'Article XII-- Severance Clause
 '(a) When, in the sole judgment of the Company, it decides to discontinue operation of any portion of its wholesale house; the subject of this Agreement; and if said discontinuance of operations would result in the permanent termination of employment of individuals covered by this Agreement; said terminated employees shall be entitled to a severance allowance in accordance with and subject to the following provisions:
 '1. In lieu of severance allowance, the Company may offer an eligible employee a job in the job classification to which his seniority and job ability qualifies him. If offered, the employee shall have the option of accepting such new employment, or requesting his severance allowance.
 '2. If the employee accepts such other employment, his continuous service record shall be deemed to have commenced as of the date of starting on the new employment; except for purposes of vacation his continuous service shall be maintained and not be deemed to have been broken by the change in employment.
 '3. If said change in employment results in the permanent displacement of some other employee, the latter shall be eligible for severance pay provided he otherwise qualifies under the terms of this section.
 '(b) An eligible employee shall receive severance allowance computed on the same basis as provided for vacation pay.'