Joseph E. MORELLO, Bobby Spivey, J.P. Morgan, Sam Wilson, Richard Woodward and Ray Bullard, and Marine Officers Association, Teamster Local No. 54, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Plaintiffs,

v.

FEDERAL BARGE LINES, INC., a Delaware corporation, and the Valley Lines Company, a Delaware corporation, Defendants.

No. 83–1956C (A).

United States District Court, E.D. Missouri, E.D.

Oct. 21, 1983.

Jerome J. Duff, Edward Sweeney, St. Louis, Mo., for plaintiffs.

Thomas O. McCarthy, St. Louis, Mo., for Valley Lines.

Neil N. Bernstein, Ned O. Lemkemeier, St. Louis, Mo., for Federal Barge Lines.

## MEMORANDUM AND ORDER

HARPER, District Judge.

This matter is before the Court on plaintiffs' request for injunctive relief to maintain the status quo of certain labor agreements, including an order compelling defendants to arbitrate a contractual dispute. Both defendants to this action have filed motions to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted.

Plaintiffs, Joseph E. Morello and Bobby Spivey, are regular employees of defendant, Valley Barge Lines, and are duly elected executive officers of the Marine Officers Association. Plaintiffs, Ray Bullard and Richard Woodward, are regular employees of defendant, Valley Barge Lines, and members of the Marine Officers Association. Plaintiffs, J.P. Morgan and Sam Wilson, are regular employees of the defendant, Federal Barge Lines, and members of the Marine Officers Association. Plaintiff, Marine Officers Association Local No. 54, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as MOA), is a labor organization headquartered in St. Louis, Missouri.

Defendant, Federal Barge Lines, Inc. (hereinafter referred to as Federal), is a Delaware corporation headquartered in St. Louis, Missouri.

Defendant, Valley Line Company (hereinafter referred to as Valley), is a Delaware corporation headquartered in St. Louis, Missouri.

Jurisdiction for this action is found in Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), relating to suits for violation of contracts between an employer and a labor organization.

This case was tried to the Court, and the pleadings, affidavits, exhibits and testimony of the parties constitute the following findings of fact:

MOA has represented supervisory marine officers employed by the two defendant barge lines for approximately twenty years. The labor agreements of both companies with MOA were set to expire on August 15, 1983, but provided that the agreements would stay in effect from year to year unless written notice of desire to cancel or terminate the agreement was served by either party upon the other at least sixty days prior to the date of expiration. Both Valley and Federal chose to terminate their respective agreements with MOA and mailed timely notice to that effect. MOA had served notice to the barge lines to open the agreements for negotiations, but both defendants disregarded that notice.

MOA then filed a UC-Unit Clarification petition with the National Labor Relations Board (hereinafter referred to as NLRB) seeking to secure a determination by the Board that the Union's members were nonsupervisory employees of Valley. A nonsupervisory status for the employees as defined by 29 U.S.C. § 152(11) is necessary if MOA is to be able to file a 29 U.S.C. § 159 representation petition with the NLRB and thereby force Valley and Federal to collectively bargain with the employees. Both Valley and Federal refused to negotiate with MOA over a new labor agreement because they believed that no obligation under federal law existed that would force them to collectively bargain with what they considered to be supervisors.

The existing labor agreements defined the status and duties of the covered employees as follows:

"It is agreed that all deck and engineer officers covered by this Agreement are vested by the Company with authority, at least effectively to recommend the hiring, transfer, suspension, discharge, and discipline of crew members, and with authority, in the exercise of their independent judgment, responsibility to direct members of the crew in the performance of their work. Nothing contained herein shall be construed as limiting the normal work functions of either deck or engineer

officers." (MOA/Valley Agreement, Article III, § 2.)

"It is agreed that all Deck Officers covered by this Agreement are supervisors within the definition of supervisor as set forth in the National Labor Relations Act, and shall mean in this instant situation that said Deck Officers as individuals, have the authority, acting in the interest of the Company, to cause other employees to be hired, transferred, suspended, laid off, recalled, promoted, rewarded or disciplined whether by taking the action himself or recommending it to a superior, or who has the authority to responsibly direct other employees or adjust their grievances. It is further understood and agreed that as a matter of Company policy, the exercising of this authority is not of a merely routine nature, but requires and allows the Deck Officers independent judgment. Nothing contained herein, however, shall be construed as limiting the normal work function of the Officer so long as the Company shall not direct or require the Officer to perform work which is recognized as work of employees of the Company not covered by this Agreement." (MOA/Federal Agreement, Article III, § 2.)

Title 29 U.S.C. § 152(11) defines supervisors under the Act, as:

"Any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

Title 29 U.S.C. § 164(a) provides that:

"No employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

MOA withdrew its petition for unit clarification with the NLRB ten days after filing, presumably because they had learned that the NLRB's regional director would dismiss their petition. Immediately thereafter, MOA filed an unfair labor practice charge against Valley, claiming that Valley "has failed to bargain with [MOA] * * *, the exclusive bargaining representative for the employees of the employer in a unit appropriate for such purpose by withdrawing recognition and refusing to negotiate."

One month after filing, MOA chose to also withdraw the above charge. The evidence discloses that the NLRB's regional director would have dismissed the unfair labor practice charge because of the supervisor status of the employees. Evidently MOA decided that a change in the definition of the member employees in the current contract was necessary if they were going to be able to force the defendants to collectively bargain with them after the contract expired.

Plaintiffs filed a complaint on August 11, 1983, four days before the current contract was set to expire, asking for a temporary restraining order maintaining the contractual status quo until the status of the employees pension benefits could be determined and until MOA and the defendants could initiate grievance procedures for their disputes. Plaintiffs thereafter changed the nature of their complaint to one asking for a permanent injunction, asking the court to maintain the viability of the labor contract and to compel arbitration over what they alleged was a contractual dispute regarding the supervisor status of the employees. The pension claims of the original complaint were dropped by agreement of the parties.

Plaintiffs argue that the defendants have refused to abide by the grievance provision in the labor agreements by failing to meet and arbitrate the status of the employees under the contract. Both defendants maintain that no dispute exists that requires arbitration and that they are not bound to arbitrate this matter by the terms of the contract. Presumably, MOA wishes to al-

ter the definition of the employees as it appears in the now-expired contract, in hopes that the change will make their position with the NLRB more favorable when they next file either a unit clarification or representation petition. In its request for an injunction, MOA does not ask the court for any determination as to whether their members are supervisors. Instead, they seek a determination as to whether the defendants violated the grievance article by failing to arbitrate with MOA while the subject labor agreements were still effective.

■ This Court denies the motions to dismiss of both defendants. Defendants cite *Local Union 204, etc. v. Iowa Electric Light, etc.,* 668 F.2d 413 (8th Cir.1982), for authority that the NLRB, and not the federal court under the guise of a § 301 action, is the proper forum for the resolution of representational issues. But here, unlike *Iowa Electric,* no representational issue is before the Court to be determined. Also, even if the NLRB has jurisdiction over the representational issue (whether the employees are supervisors), it is clear that jurisdiction in no way acts as a bar to the arbitration of this grievance. *International Association, etc. v. International Air Service,* 636 F.2d 848 (1st Cir.1980); *International Union v. E-Systems, Inc.,* 632 F.2d 487, 490 (5th Cir.1980); *Carey v. General Electric Co.,* 315 F.2d 499 (2nd Cir.1963). In addition, there is no evidence that the NLRB has made any final determination on the representational issue. The evidence only shows that the NLRB only allowed MOA to withdraw its petitions. This Court is only asked to decide, under § 301, whether a contract violation has taken place, and if so, to provide an appropriate remedy for that violation.

Plaintiffs contend that the language of the grievance article mandates arbitration between the employer and employees as to any dispute, and by refusing to do so, both Federal and Valley have violated the contracts. Both labor contracts are substantially identical with regard to the grievance article at issue. The grievance article in the MOA/Valley contract provides:

"Should there arise between the Company, the Union or Company employees, individually or collectively, any dispute, difference, disagreement or grievance of whatever kind or nature, it shall in no event be the subject of lock-out, strike or work stoppage. Instead, such dispute or grievance shall be initiated within sixty (60) days and adjusted in the following manner:

"(a) Representatives of the Company and the Union shall meet and honestly endeavor to adjust, compromise, or settle said grievance. If a mutual agreement can be reached in this manner it shall be binding upon the Company, the Union and the employees of the Company.

"(b) If the matter cannot be satisfactorily adjusted through the means provided in (a) above, it shall be referred to a panel of arbitration for a decision which shall be final and binding upon the Company, the Union and the Company employees. There shall be a panel of three arbitrators, one to be designated by the Company, one to be designated by the Union, and a third or impartial member of the panel to be selected by the first two. If the first two cannot reach an agreement as the impartial arbitrator, the third member of the panel shall be designated by the presiding Judge of the United States District Court for the District within which the agreement is executed.

"The parties shall equally bear the expense of the arbitration proceedings and the impartial arbitrator.

"Refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision, then, in that event both parties shall be free to pursue any other means at their disposal to support their contention. This shall include, but not be limited to, the right of the Company to lock out its employees and the right of the Union to strike." (MOA/Valley Agreement, Article VIII.)

Under previous case law, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). In *United Steelworkers v. Warrier and Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the court said, at 582, 80 S.Ct. at 1353:

> "The Congress has by § 301 of the Labor-Management Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

The plaintiffs' suit centers primarily on whether their agreement provides for mandatory arbitration of the supervisory status of the employees. A seemingly mandatory first paragraph to the grievance article provides: "Should there arise * * * any dispute * * * of whatever kind or nature * * [i]t shall in no event be the subject of lock-out, strike or work stoppage. Instead, such dispute * * * shall be initiated * * * and adjusted in the following manner:" Such broad and sweeping language has frequently been construed by the courts to require arbitration of any grievance not expressly excluded, without weighing the claims on the merits. See *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Communication Workers of America v. Bell Telephone Laboratories, Inc.*, 349 F.2d 398 (3rd Cir.1965); *General Warehousemen and Employees Union No. 636 v. American Hardware Supply Co.*, 329 F.2d 789 (3rd Cir.), cert. denied 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964); *Procter and Gamble Independent Union of Port Ivory, N.Y. v. Procter and Gamble Mfg. Co.*, 298 F.2d 644 (2nd Cir.1962).

None of the cases listed above, however, contained a similar provision as contained in the last paragraph in the subject grievance article. That paragraph provides that if either party refuses "to submit to * * * the grievance procedure at any stage * * * then, in that event both parties shall be free to pursue any other means at their disposal to support their contention." This language is in direct conflict to the first paragraph in the grievance article, and operates, in this court's view, as an option that either party may resort to if they do not choose to arbitrate a dispute. It is clear that the parties contemplated a situation where if one of the parties did not wish to arbitrate a dispute, such party could refuse to "submit to" or "comply with" the grievance procedure. The contract further provided that if either refused to arbitrate the parties "shall be free" to pursue any other means to support their contentions, including the before-prohibited means of "lock-out" or "strike." The language is clear and unambiguous as to the intent of the parties when this contract was written, and as such cannot be interpreted as requiring mandatory arbitration by either party.

It is the Court's finding that the defendants were not obligated to submit to arbitration by the terms of their contracts with the plaintiffs. Accordingly, the plaintiffs' request for an injunction is denied.