**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Loran W. Robbins, Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard McDougall, Arthur H. Bunte, Jr., R. Jerry Cook and R.V. Pulliam, Sr., the present Trustees, Plaintiffs,**

v.

**HOUSTON PIPE LINE COMPANY, a Texas corporation; Pott Industries, Inc., a Missouri corporation; and Federal Barge Lines, Inc., a Delaware corporation, Defendants.**

No. 88 C 6955.

United States District Court, N.D. Illinois, E.D.

March 2, 1989.

---

Lance D. Taylor, Terence G. Craig, Thomas C. Nyhan, Cent. States Pension Fund, Chicago, Ill., for plaintiffs.

Lawrence J. Zabinski, McDermott Will & Emery, Chicago, Ill., Juan D. Keller, Brenda L. Talent, Douglas W. King, Bryan Cave

McPhee & Roberts, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and its trustees (collectively "Central States") bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, *et seq.*, against defendants Houston Pipe Line Company and various corporate offspring (collectively the "Houston Group") seeking payment of a withdrawal assessment. In addition to denying liability, the Houston Group raises five affirmative defenses and a counterclaim. Plaintiffs move for summary judgment, to strike the affirmative defenses and to dismiss the counterclaim. For the reasons that follow, the motion for summary judgment is granted, the motion to strike is granted in part and denied in part, and the motion to dismiss is denied.

### I. Factual Background and Procedural History

For at least fifteen years, defendant Federal Barge Lines, Inc. ("Federal Barge") and Valley Line Co., a company not a party to this litigation, negotiated and executed a series of collective bargaining agreements with Local No. 54 of the Marine Officers Association ("Local 54") on behalf of certain employees, including masters, mates and pilots. The last agreements expired on August 15, 1983, at which time Federal Barge and Valley Line refused to bargain with Local 54, taking the position that the employees covered by the agreements were supervisors under the National Labor Relations Act ("NLRA") and the companies accordingly had no duty to negotiate on their behalf. 29 U.S.C. § 164(a).[1] Local 54 filed a unit clarification petition and an unfair labor charge with the National Labor Relations Board ("NLRB") against Valley Line, both of which Local 54 voluntarily withdrew on advice of counsel. Local 54 then filed an action against both companies in a Missouri district court which dismissed the action. *Morello v. Federal Barge Lines, Inc.*, 575 F.Supp. 87 (E.D.Mo.1983). The Eighth Circuit affirmed, holding that the question whether Federal Barge has a legal duty to bargain with Local 54 on behalf of the masters, mates and pilots is within the primary jurisdiction of the NLRB. *Morello v. Federal Barge Lines, Inc.*, 746 F.2d 1347 (8th Cir.1984).

The final judgment in that action did not resolve Federal Barge's dispute with Central States arising from the termination of the union contract. Under the terms of the collective bargaining agreements, Federal Barge was required to make contributions to the Central States Pension Fund ("Fund") on behalf of covered employees. While Federal Barge now disputes the enforceability of these terms, it nevertheless contributed a total of approximately $3,539,000 to the Fund through the years up to and including 1984. On an unspecified date after expiration of the collective bargaining agreement, Federal Barge ceased making payments to the Fund. On June 26, 1985, Central States sent a notice to Federal Barge demanding payments totalling $630,995.09 for withdrawal liability within the meaning of § 4201(a) of ERISA, 29 U.S.C. § 1381(a).[2] Federal Barge rejected Central States' demand and on April 30,

---

1. This section provides that

   Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

2. This section provides:

   If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.

   Central States charged the Houston Group with a partial withdrawal since Federal Barge's agreement was only one of several in which the Houston Group agreed to contribute to the Fund.

1986, initiated arbitration proceedings before the American Arbitration Association.[3] In the arbitration petition, Federal Barge expressly reserved its right to assert its defenses to withdrawal liability in federal court.

On August 11, 1988, Central States filed this action seeking past due and interim withdrawal liability payments pending judgment in the arbitration proceedings. In its answer, the Houston Group denies the court's jurisdiction over this action and alleges that the provisions of the collective bargaining agreement upon which Central States hinges its claim for withdrawal liability are illegal and unenforceable. In a counterclaim, the Houston Group seeks a refund of all past contributions.

## II. Motion for Summary Judgment

■ Congress passed the MPPAA in order to funnel disputes over withdrawal liability between an employer and a pension plan into the presumably quicker and less formal mechanism of arbitration. *Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987). The central provision in the MPPAA statutory scheme states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). "Congress' directive is clear. Any dispute over withdrawal liability as determined under the enumerated statutory provisions shall be arbitrated." *I.A.M. National Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 417 (D.C.Cir.

1987). Arbitration is the appropriate forum regardless of whether the dispute centers on an interpretation of provisions of the MPPAA, *id.* at 418, or involves only issues of law. *Banner Industries, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 657 F.Supp. 875, 883 (N.D.Ill.1987) ("[T]he scope of an arbitrator's jurisdiction cannot turn on the presence or absence of factual disputes").

Congress also established a "pay now, dispute later" arrangement in order to assure that a pension fund is able to meet its benefits obligations to employees pending arbitral review. *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986). Section 4221(d) of the MPPAA provides that:

> Payments shall be made by the employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. 29 U.S.C. § 1401(d).

Thus, during the time in which a dispute is properly before an arbitrator, the employer must make withdrawal payments and a pension fund may sue in federal court to seek such payments. 29 U.S.C. § 1451(a)(1).

The Houston Group's challenge to withdrawal liability is summarized as follows: Under § 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(5),[4] an employer may not

---

3. For purposes of these motions, all actions of Federal Barge are attributable to the Houston Group.

4. This section provides in pertinent part:
   The provisions of this section [forbidding transfers between employer and representatives of employees] shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and de-

pendents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer....

contribute and a pension fund may not accept funds that will not be used for the benefit of employees of the contributing employer. *United Mine Workers v. Robinson*, 455 U.S. 562, 570, 102 S.Ct. 1226, 1231, 71 L.Ed.2d 419 (1982). Since all of Federal Barge's employees are supervisors and the Central States Pension Plan provides that no funds will be used for the benefit of employees properly categorized as supervisors,[5] the Fund may not accept contributions or demand withdrawal liability.

The Houston Group characterizes this dispute as one over Federal Barge's status as an "employer" under the MPPAA and thereby seeks to invoke a long-recognized exception to the MPPAA's arbitration mandate. Most courts faced with the issue have concluded that an employer's challenge to its status as an "employer" under the MPPAA creates a dispute properly resolved in federal court rather than arbitration. Determining the disputing parties' status is a prerequisite to application of the arbitration provision. Included among the more common nonarbitrable challenges to employer status are whether corporate officers and shareholders are "employers," *see, e.g., United Paperworkers International Union, Local No. 35 Pension Plan v. Arlington Sample Book Co.*, 5 Employee Benefits Cases (BNA) 1948, 1984 WL 6625 (E.D.Pa.1984); whether a company is the "employer" of an independent contractor, *see, e.g., Refined Sugars, Inc. v. Local 807 Labor–Management Pension Fund*, 632 F.Supp. 630 (S.D.N.Y.1986); and whether the entity from which a plan seeks withdrawal liability is an "employer" by virtue of its membership in a control group under 29 U.S.C. § 1301(b)(1),[6] *see, e.g., Mason and Dixon Tank Lines, Inc. v. Central States, Southeast & Southwest Areas*

*Pension Fund*, 852 F.2d 156 (6th Cir.1988); *Tri–State Rubber v. Central States*, 661 F.Supp. 46 (E.D.Mich.1987). *See also Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1247, 1251 (3d Cir.1987) (mandating arbitration of disputes as to whether an entity which at one time was properly deemed an "employer" under the MPPAA lost such status).

We reject the Houston Group's characterization of this dispute. The uncontroverted evidence establishes that the Group is an employer within the meaning of the MPPAA. An "employer" is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). "The term 'employee' means any individual employed by an employer." 29 U.S.C. § 1002(6). While these definitions appear tautological at first glance, we view them as establishing three prerequisites to "employer" status under the MPPAA—that the person "employ" individuals under the ordinary meaning of the verb, that it do so "directly" rather than through other legal entities, such as subsidiaries, and that it "act" in relation to a benefit plan. Federal Barge directly employs the masters, mates and pilots and contributed funds on their behalf to the Fund. That the law might have not allowed such contributions does not implicate Federal Barge's status as an employer.

The proper characterization of the Houston Group's defense to withdrawal liability is as a challenge to Federal Barge's obligation to contribute which concerns a "determination made under sections 1381 through 1399" and is accordingly arbitrable. 29 U.S.C. § 1401(a)(1). Section 1392 defines the parameters of the obligation to contribute:

---

5. The Central States Pension Plan provides in pertinent part as follows:

Covered Service shall not include any period of self-employment, or employment as an employer, or as a member of a partnership or in a managerial or supervisor capacity. § 1.11.A.

[A]ny individual who is self-employed or a member of a partnership or employed in a managerial or supervisory capacity shall not

be an employee for purposes of this Pension Plan. § 1.14.

6. This section provides in pertinent part:

For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.

For purposes of this part, the term "obligation to contribute" means an obligation to contribute arising—

    (1) under one or more collective bargaining (or related) agreements, or

    (2) as a result of a duty under applicable labor-management relations law, but

does not include an obligation to pay withdrawal liability under this section or to pay delinquent contributions. 29 U.S.C. § 1392(a).

A dispute over whether labor law imposes an obligation to contribute unequivocally falls within the arbitration mandate. There is no statutory or practical reason why an employer and pension plan should not arbitrate a dispute over whether applicable labor law nullifies an otherwise enforceable contractual obligation to contribute. An arbitrator empowered (and thereby deemed qualified) to discern what labor law affirmatively dictates in this context is also authorized to interpret that which it forbids. Accordingly, Central States and the Houston Group must resolve their dispute in arbitration, and the Houston Group must make interim payments pending the results. Central States' motion for summary judgment is granted.

### III. Motion to Strike Affirmative Defenses

The Houston Group's five affirmative defenses center on two contentions: (A) that the contribution provisions of the collective bargaining agreement are unenforceable and (B) that the NLRB has primary jurisdiction over this action. We strike only those defenses that center on the latter.

### A. Enforceability of the Contribution Provisions

■ In its third affirmative defense, the Houston Group raises the challenge to liability that formed the basis of their opposition to summary judgment: since § 302(c)(5) of the LMRA forbids Federal Barge from contributing to the Fund, the Fund cannot seek withdrawal liability. Central States moves to strike this defense on the merits, relying solely on the decision in *O'Hare v. General Marine Transport*

*Corp.,* 564 F.Supp. 1064 (S.D.N.Y.1983), *aff'd,* 740 F.2d 160 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). In *O'Hare,* the district court rejected the following defense to a claim for past contributions:

General Marine asserts that it should not be required to make contributions for captains. Its argument is as follows: section 302(c)(5) of the LMRA, requires that the contributions be used for the "sole and exclusive benefit of the employees" the term "employee" in LMRA § 302(c)(5) is defined by LMRA § 501(3), which refers to the definition in section 2(3) of the National Labor Relations Act ("NLRA"); NLRA § 2(3) defines "employee" as excluding "any individual employed as a supervisor"; captains are "supervisors" within NLRA § 2(11); therefore, "employees" under LMRA § 302(c)(5) does not include "supervisors," or in this case, captains.

Courts have rejected such a literalistic and automatic application of the NLRA definitional provisions to the various provisions of the LMRA. Specifically, several courts have held that the "supervisor exclusion" of NLRA § 2(3) is inapplicable to other provisions of the LMRA, and that the exclusion was meant to apply only to provisions of the NLRA. (Citations omitted.) *Id.* at 1069–70.

The Houston Group's third affirmative defense differs from that rejected in *O'Hare* in two significant ways. First, as clarified in the memorandum in opposition to the motion to strike, the defense relies not only on the definitional provisions of the LMRA and NLRA but also on the express provisions of the Plan that forbid the payment of benefits to supervisors. Further, *O'Hare* has been limited to situations in which the employer seeks to defeat liability on behalf of only a subset of all employees allegedly covered by a plan. *Trapani v. Consolidated Edison Employees' Mut. Aid Soc.,* 651 F.Supp. 400, 404 (S.D.N.Y. 1987). The Houston Group challenges its obligation to contribute on behalf of all of its employees. The challenge is cognizable whether it hinges on the terms of the Plan or solely on statutory language. Accord-

ingly, the motion to strike the third affirmative defense is denied.[7]

### B. Primary Jurisdiction of the NLRB

■ The Houston Group bases four of its affirmative defenses on its contention that the NLRB has primary jursidcition over this action since the pivotal dispute is whether Federal Barge's employees are supervisors within the meaning of the NLRA.[8] The Houston Group appears to rely on *Morello* in which the Eighth Circuit held that the NLRB has primary jurisdiction over this same dispute in the context of Federal Barge's alleged duty to bargain. 746 F.2d 1347. That decision in no way divests this Court of jurisdiction over Central States' claim for withdrawal liability. The court in *Morello* was faced with a claim to force Federal Barge to negotiate a new collective bargaining, not a claim to recover withdrawal liability. The MPPAA expressly grants subject matter jurisdiction over claims for withdrawal liability. 29 U.S.C. § 1451. That the claim implicates labor law does not limit this grant of jurisdiction. *E.g.,* 29 U.S.C. § 1392(a).[9] Accordingly, the motion to strike the first, second, fourth and fifth affirmative defenses is granted.

### IV. Motion to Dismiss Counterclaim

■ In addition to opposing withdrawal liability on the basis of § 302(c)(5) of the LMRA, the Houston Group seeks in its counterclaim a refund of all past contributions in the amount of $3,539,889 plus interest. Central States moves to dismiss the counterclaim first on the grounds that the law does not recognize a cause of action to recover mistaken contributions. Under § 403(c)(2)(A), an ERISA Plan appears to have unfettered discretion in handling mistaken contributions:

> In the case of a contribution, or a payment of withdrawal liability ...
> (ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake. 29 U.S.C. § 1103(c)(2)(A).

ERISA provides only for actions by the Secretary of Labor and plan participants, beneficiaries and fiduciaries and does not expressly furnish an avenue by which employers can recover mistaken or illegal contributions. 29 U.S.C. § 1132(e).[10] Most courts have nevertheless entertained such actions by recognizing either an implied private right of action, *see, e.g., Service, Inc. v. Northern California Retail Clerks Unions & Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1068–69 (9th Cir. 1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986), or an action for restitution under the federal common law, *see, e.g., Whitworth Bros. Storage Co. v.*

---

7. For purposes of this lawsuit, the practical implication of granting Central States' motion for summary judgment but denying the motion to strike the third affirmative defense is to recognize that there is a cognizable dispute for arbitration.

8. The four defenses are as follows: first affirmative defense—lack of subject matter jurisdiction; second affirmative defense—failure to state a claim for relief; third affirmative defense—waiver and estoppel; fourth affirmative defense—lack of venue.

9. Defendants rely on a number of decisions which hold that certain claims brought by a pension fund for unpaid contributions are in effect unfair labor charges that fall within the NLRB's primary jurisdiction. *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 108 S.Ct. 830, 98

L.Ed.2d 936 (1988); *New Bedford Fishermen's Welfare Fund v. Baltic Enterprises, Inc.,* 813 F.2d 503 (1st Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1074, 99 L.Ed.2d 234 (1988). These decisions apply only to the "narrow category of suits seeking recovery of unpaid contributions between contract expiration and [bargaining] impasse." *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 779 F.2d 497, 505 (9th Cir.1985), *aff'd,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). Central States' claim for withdrawal liability cannot remotely be deemed an unfair labor charge.

10. This section provides in pertinent part:
   Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary.

*Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *Teamsters Local 639 v. Cassidy Trucking, Inc.,* 646 F.2d 865 (4th Cir.1981); *Soft Drink Industry Local Union No. 744 Pension Fund v. Coca–Cola Bottling Co. of Chicago,* 679 F.Supp. 743 (N.D.Ill.1988).

We agree with the vast majority of courts that have rejected an implied private right of action under the analysis set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *E.g., Dime Coal Co., Inc. v. Combs,* 796 F.2d 394 (11th Cir.1986); *Whitworth Bros.,* 794 F.2d at 228–233; *Soft Drink,* 679 F.Supp. at 746–48. The focus of this analysis is legislative intent. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982). In *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court had cause to assess congressional intent in the ERISA context. In declining to imply a beneficiary's private right of action for extra-contractual damages arising out of improper claim processing, the Court stated that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3093. The exclusion of employers from § 502(a), 29 U.S.C. § 1132(a), must be considered intentional rather than mere oversight, *Soft Drink,* 679 F.Supp. at 747, and an employer's participation in fund decision-making provides some, albeit limited, protection from arbitrary refusals to refund contributions. *Dime Coal,* 796 F.2d at 399 n. 6.

That an implied private remedy may be unavailable does not close the door to "appropriate equitable relief." *Russell,* 473 U.S. at 156, 105 S.Ct. at 3097 (Brennan, J., concurring). The weight of authority recognizes that an employer should have some remedy available in the event that a fund refuses a reasonable request for a refund of unlawful or mistaken contributions. Courts have found this remedy in federal common law:

> It would take more unequivocal language than that found in the refund section [ERISA § 403(c)(2)(A)] for us to conclude that Congress intended the potentially absurd consequences which might result if employers have no hope of recovering mistaken overpayments. Not every pension fund will necessarily be administered in a reasonable manner. In the absence of at least an equitable action, there will be no incentive for fund trustees to return overpayments to employers.... We do not imagine that Congress which passed the 1980 amendments to ERISA intended employers to be completely at the mercy of fund trustees.... In saying that ERISA "does not prohibit" a refund to employers, Congress implicitly left open the possibility that some other law might compel such a refund. As we have concluded that Congress did not intend to create a private right of action for employers under ERISA, this can only have been a common law equitable action. As state restitution law is preempted by ERISA, the action must be one arising under federal common law. *Soft Drink,* 679 F.Supp. at 750–51.

*See also Whitworth,* 794 F.2d at 234–36.[11] We adopt the reasoning of these decisions

---

11. Central States relies on two decisions in opposition to this federal common law action. *Dime Coal,* 796 F.2d 394; *Crown Cork & Seal Co. v. Teamsters Pension Fund,* 549 F.Supp. 307 (E.D.Pa.1982), *aff'd without opinion,* 720 F.2d 661 (3d Cir.1983). Neither is compelling. In *Dime Coal,* the Eleventh Circuit refused to recognize the cause of action in a short analysis relegated to a footnote:

> Although the question is not well presented, since appellee has not seriously pursued this

alternative basis for affirmance on its appeal, we hold that no federal common law right to recovery of the disputed contributions at issue in this case exists. As the Supreme Court recently cautioned, "the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."

and hold that the federal courts have jurisdiction over a claim for a refund of mistaken contributions under equitable principles of federal common law.

 Central States also contends that the Houston Group must arbitrate its counterclaim. Given that the basis of the counterclaim is federal common law, it is not surprising that there is no statutory directive to arbitrate. However, an arbitrator will decide the fundamental issue of the counterclaim—whether the contribution provisions in the collective bargaining agreement violate § 302(c)(5) of the LMRA—in the context of Central States' demand for withdrawal liability. The very equity justifying recognition of the counterclaim militates against allowing the Houston Group to litigate that issue in this Court at the same time the parties are presenting their case before the arbitrator. Accordingly, we hold that, in the context of this counterclaim, Central States and the Houston Group are bound to the decision of the arbitrator to the extent that the arbitrator resolves issues relevant to the counterclaim. In the event that the Houston Group prevails before the arbitrator, Central States may then raise applicable equitable defenses in this Court. Although we cannot dismiss the counterclaim on the basis of plaintiff's motion,[12] we believe that during the course of arbitration it is likely that the issues raised in the counterclaim will become resolved or settled. In any event, counterclaim issues not resolved by arbitration would not be addressed by this Court until arbitration is concluded. For this reason, we dismiss the counterclaim without prejudice. The Houston Group may move to reinstate the counterclaim after conclusion of the arbitration proceeding, if it so chooses.

### V. Conclusion

For the reasons set forth above, Central States' motion for summary judgment on its claim is granted, and the motion to dismiss the counterclaim is denied. The motion to strike the affirmative defenses is granted as to the first, second, fourth and fifth defenses and denied as to the third defense. The parties are to proceed forthwith before the arbitrator. Defendants are to pay all past due and interim payments for withdrawal liability as calculated by Central States pending the arbitrator's decision. The counterclaim is dismissed without prejudice to reinstate under the terms as set forth in this opinion. It is so ordered.

---

796 F.2d at 399 n. 7, *quoting Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981). As to *Crown Cork,* the Third Circuit recently stated that "[t]he district court's opinion in *Crown Cork* did not address the question of whether an equitable, federal common law cause of action exists." *Airco Industrial Gases, Inc. v. Teamsters Health and Welfare Pension Fund,* 850 F.2d 1028, 1032 n. 2 (3d Cir.1988).

**12.** For the reasons set forth in the section of this opinion denying the motion to strike the third affirmative defense, we reject Central States' contention that the counterclaim is at best not cognizable and at worst frivolous. Further, there is no reason to convert Central States' motion to dismiss to one for summary judgment, and we accordingly strike the affidavit of Bruce Trojak filed in support of the motion.